UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:13-cv-296-FDW

| MICHAEL RAY KING, | ) |
|---|---|
| Petitioner, | ) |
| vs. | ) **ORDER** |
| STATE OF NORTH CAROLINA,[1] | ) |
| Respondent. | ) |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment, (Doc. No. 8).

I.  **BACKGROUND**

Pro se Petitioner is a prisoner of the State of North Carolina, who, on September 10, 2008, in Buncombe County Superior Court, was convicted after trial by jury of possession with intent to sell or deliver cocaine, sale of cocaine, possession of drug paraphernalia, and having obtained the status of habitual felon. The trial court sentenced Petitioner to two consecutive terms of 150-189 months imprisonment, plus one concurrent term of 30 days, in cases 08 CRS 306, 50162-64. See (Doc. No. 9-3). On February 7, 2012, the North Carolina Court of Appeals filed a published opinion finding no error in the underlying drug charges, but reversed for a new habitual felon status hearing because neither the verbatim transcript, nor an adequate alternative to conduct meaningful review of Petitioner's habitual felon status hearing, was available. State v. King, __ N.C. App. __ , 721 S.E.2d 336 (2012).

---

[1]  Because Petitioner is incarcerated at Franklin Correctional Center, the proper Respondent is the Administrator of that facility.

1

Petitioner was represented at trial by Suzanne A. Alford and on appeal by Staples Hughes and Kristen L. Todd. On March 5, 2012, Petitioner pled guilty to habitual felon status and was sentenced, pursuant to the exact terms of his plea bargain, to one consolidated judgment on all charges, to 168-211 months imprisonment. (Doc. Nos. 9-7; 9-8). On January 17, 2013, Petitioner filed a pro se motion for appropriate relief ("MAR") in Buncombe County Superior Court. (Doc. No. 9-9). On February 28, 2013, the MAR Court summarily denied the MAR. (Doc. No. 9-10). On March 26, 2013, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals. (Doc. No. 9-11). On April 11, 2013, the state filed a response, noting that Petitioner had failed to comply with the requirement that he attach a copy of his MAR. (Doc. No. 9-12). On April 12, 2013, certiorari was dismissed. (Doc. No. 9-13).

On April 25, 2013, Petitioner filed a pro se "Notice of Motion to Appeal" in the North Carolina Supreme Court, which motion was dismissed on August 27, 2013. (Doc. No. 9-14). On July 11, 2013, Petitioner filed a second certiorari petition in the North Carolina Court of Appeals. (Doc. No. 9-15). On July 25, 2013, the state filed a response. (Doc. No. 9-16). On July 29, 2013, certiorari was denied. (Doc. No. 9-17). On September 23, 2013, Petitioner filed a third pro se certiorari petition in the North Carolina Court of Appeals. (Doc. No. 9-18). On October 7, 2013, the state filed a response. (Doc. No. 9-19). On October 9, 2013, certiorari was denied. (Doc. No. 9-20).

Petitioner dated his pro se federal habeas application form October 31, 2013, and filed it in this Court on November 4, 2013. On December 13, 2013, Respondent filed the pending motion for summary judgment. (Doc. No. 8). On January 6, 2014, this Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), granting Petitioner fourteen days

to respond to the summary judgment motion. (Doc. No. 10). On January 21, 2014, Petitioner filed a response to the summary judgment motion. (Doc. No. 12). Petitioner's response is in the form of two affidavits in which Petitioner reasserts his legal claims in conclusory fashion.

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> At trial, the evidence presented showed that on 4 January 2008 at 1:00 a.m., two plain clothed officers with the Asheville Police Department Drug Suppression Unit were driving in the area of the Lee Walker Heights Apartment complex, an area from which the department had received a number of complaints regarding drug activity. The officers were in an unmarked vehicle. Defendant approached the vehicle and one of the officers asked if he could purchase thirty dollars worth of "crack cocaine." Defendant took the money, entered the apartment complex, and within five minutes returned and handed drugs to the officer. A marked police car, surveilling the transaction, then arrived and arrested defendant.
> Defendant was found guilty of possession with intent to sell or deliver cocaine, sale of cocaine, and possession of drug paraphernalia. Subsequently, defendant was found guilty of attaining habitual felon status. The trial court entered judgment in accordance with the jury verdict, sentencing defendant to thirty days for possession of drug paraphernalia, and consecutive sentences of 150 to 189 months for possession with intent to sell or deliver cocaine and selling cocaine.

State v. King, __ N.C. App. __ , 721 S.E.2d 336, 339 (2012).

Petitioner brings the following grounds for relief in his § 2254 petition: (1) his Eighth Amendment right against cruel and unusual punishment was violated, along with his right of due process, because he received a 168-211 month habitual felon sentence; (2) his right against double jeopardy was violated because his habitual felon status was vacated by the North Carolina Court of Appeals' February 7, 2012, opinion, and his underlying sentences were terminated; (3) he received ineffective assistance of counsel for various reasons; and (4) his plea to habitual felon status was not constitutionally informed because he was threatened by the prosecutor and

3

misled by the court as to the actual value of the plea bargain.

## II.    STANDARD OF REVIEW

### A.  Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).  Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).  Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B.  Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254.  Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In addition, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S.Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id.

5

(citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10-6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Furthermore, for convictions that became final before the AEDPA's effective date, the limitations period began to run on April 24, 1996, the effective date of the Act. See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000). Finally, the one-year limitations period is tolled during pendency of a properly filed state post-conviction proceeding. See 28

U.S.C. § 2244(d)(2). However, the filing of any motions after the one-year limitations period has already run do not revive the already expired one-year limitations period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (concluding that the Section 2254 petition was "clearly time-barred," where the petitioner had moved for post-conviction relief in state court only after the time limitation had expired).

In support of summary judgment, Respondent first contends that the petition is time-barred. The Court agrees. As Respondent notes, because Petitioner pled guilty and received a sentence of 168-211 months, with a minimum term falling within the presumptive range of punishments for his Class C habitual felon status at his prior record level VI, he had no right to appeal and his convictions therefore became final when judgment was entered on March 5, 2012.[2] (Doc. No. 9-8). See Gladney v. Hall, No. 1:12cv3, 2013 WL 6633718, at *3 (M.D.N.C. Dec. 17, 2013) (because defendants in North Carolina have a limited right to appeal after a guilty plea, a conviction after a guilty plea will usually become final when judgment is entered).

Petitioner's one-year period of limitation under 28 U.S.C. § 2244(d)(1) then ran from March 5, 2012, for 318 days until he filed his MAR on January 17, 2013. See (Doc. No. 9-9; 9-11 at 2). The MAR Court denied the MAR on February 28, 2013. Petitioner filed his first certiorari petition on March 26, 2013. (Doc. No. 9-11). However, this first petition did not toll Petitioner's one-year period of limitation because Petitioner failed to comply with the requirement that he attach a copy of the necessary documents to understand his claim, i.e., a copy of the MAR. (Doc. No. 9-11). See N.C. R. APP. P. 21(c). The state pointed out this omission in

---

[2] Even if Petitioner had a right to appeal, however, his case would have become final fourteen days after his March 5, 2012, judgment, when his time to serve notice of appeal expired. See N.C. R. APP. P. 4(a)(2). This extra fourteen days would have made no difference.

7

its response, and the Court of Appeals dismissed the petition on April 12, 2013. (Doc. No. 9-12). See N.C. R. APP. 21(e) (2013) (petition shall be dismissed when petitioner fails to comply with a rule of procedure, and denied when it is without merit). However, Petitioner's one-year period of limitation was arguably tolled by his second certiorari petition filed on July 11, 2013, since the court considered and denied that petition on July 29, 2013. See Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000) (gap between denial of MAR and filing of certiorari petition in North Carolina Court of Appeals tolled absent unreasonable delay in filing certiorari petition). Petitioner's one-year period of limitation would have recommenced on July 29, 2013, and fully expired 47 days later on Monday, September 16, 2013, i.e., 318 + 47 days = 365 days.[3] Because Petitioner dated his current pro se federal habeas application form October 31, 2013, and filed it in this Court on November 4, 2013, it is well more than one month out of time.

Respondent notes additionally that Petitioner's pro se "Notice of Motion to Appeal" filed in the North Carolina Supreme Court on April 25, 2013, and dismissed on August 27, 2013, could not toll the limitations period. (Doc. No. 9-14). This is because the North Carolina Supreme Court lacked authority to adjudicate the matter. Respondent also contends that Petitioner's third certiorari petition filed in the North Carolina Court of Appeals on September 23, 2013, could not have tolled the one-year limitations period because it had already run and because this third petition was merely a repetitive certiorari petition, seeking review of the denial of the same MAR. See Minter v. Beck, 230 F.3d at 665.

Next, to be entitled to equitable tolling, a petitioner must show that he has been pursuing

---

[3] The 47th day fell on Saturday, September 14, 2013, so the one-year limitation period would have ended on Monday, September 16, 2013. The Court further notes that the limitation period was not tolled for the ninety days that Petitioner could have sought certiorari in the U.S. Supreme Court. See Lawrence v. Florida, 549 U.S. 327, 333-34 (2007).

his rights diligently and that some extraordinary circumstances stood in the way of him filing the petition in a timely manner. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Here, Petitioner has not shown that he was diligent in pursuing his right to file his § 2254 petition, nor has he shown that an extraordinary circumstance prevented him from filing the petition in a timely manner.

## B. MERITS OF PETITIONER'S CLAIMS

In addition to arguing that the petition is barred as untimely, Respondent also contends that it is entitled to summary judgment on the merits as to all of Petitioner's grounds for relief. For the following reasons, the Court agrees. Moreover, as the Court has already noted, the only evidence presented by Petitioner in response to the summary judgment is in the form of two affidavits in which Petitioner merely re-alleges his legal claims in conclusory fashion.

### 1. Ground One

In Ground One, Petitioner contends that, in receiving a 168-211 month habitual felon sentence, his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to due process were violated. To support this contention, Petitioner asserts that his underlying drug convictions were "terminated" by the North Carolina Court of Appeals' February 7, 2012, opinion, and he was subjected to cruel and unusual punishment by his subsequent sentence for 168-211 months. Petitioner's contention is without merit. As stated above, the North Carolina Court of Appeals upheld Petitioner's underlying drug convictions, and reversed his habitual felon status for a new hearing. Thus, Petitioner's underlying drug convictions were never "terminated" as Petitioner contends.

Moreover, Petitioner raised the substance of Ground One in his MAR and the MAR

9

Court denied the claim on the merits. The U.S. Supreme Court has consistently upheld the constitutional validity of enhanced sentences based on recidivism against ex post facto, due process, equal protection, and double jeopardy challenges. See e.g., Ewing v. California, 538 U.S. 11 (2003) (sentence of 25 years to life for theft of golf clubs under California's "three strikes" law upheld under Eighth Amendment); Lockyer v. Andrade, 538 U.S. 63 (2003) (two consecutive terms of 25 years to life for two counts of petty theft under California's "three strikes" law upheld; the gross disproportionality principle under Eighth Amendment reserved only for extraordinary cases); Harmelin v. Michigan, 501 U.S. 957 (1991) (mandatory life without parole for possessing more than 650 grams of cocaine does not violate Eighth Amendment); Spencer v. Texas, 385 U.S. 554, 560 (1967) (citing cases). The state court's adjudication of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court. Nor was the state court adjudication based on an unreasonable determination of the facts, in light of the evidence presented in the state court proceedings.

Finally, Petitioner entered into a knowing, voluntary, counseled, and negotiated plea bargain for a specific consolidated sentence of 168-211 months imprisonment.[4] The trial court imposed this exact sentence, giving Petitioner the full benefit of his bargain.[5] Petitioner swore under oath in open court that his lawyer explained the nature of the charges, he understood every

---

[4] In exchange for Petitioner's guilty plea, the state agreed to "consolidate all charges into (1) Habitual Felon judgment where the Defendant will receive a minimum of 168 months and a maximum of 211 months. The State and the Defendant stipulate the Defendant has 21 points for Habitual Felon sentencing." (Doc. No. 9-7).

[5] Respondent notes that this was a very favorable plea bargain in light of Petitioner's two, previous consecutive sentences of 150-189 months.

element of each charge, discussed possible defenses, and that he was satisfied with his lawyer's legal services. See (Doc. No. 9-7). Also, defense counsel certified that he explained to Petitioner the nature and elements of the charges to which he pled guilty, and the prosecutor certified that the terms and conditions of the plea were correct. Id. Absent compelling circumstances not shown here, Petitioner is bound by his solemn in court representations during the plea colloquy. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Little v. Allsbrook, 731 F.2d 238 (4th Cir. 1984). Petitioner's own conclusory statements regarding the plea bargain are insufficient to breach the formidable barrier of Blackledge.

In sum, for the reasons stated, Ground One is denied.

**2. Ground Two**

In Ground Two, Petitioner contends that his right against double jeopardy was violated because his habitual felon status was vacated by the North Carolina Court of Appeals' February 7, 2012, opinion. This contention is a re-phrasing or slight permutation of Ground One and it is denied for the same reasons the Court is denying Ground One.

**3. Ground Three**

In Ground Three, Petitioner contends that he received ineffective assistance of counsel. To support this contention, Petitioner essentially contends that his lawyer failed to object to his $500,000 bond and failed to inform him that his sentences had been "terminated." Petitioner raised the substance of his current ineffectiveness contention in his MAR, and the MAR Court summarily denied the MAR on the merits. To establish an ineffective assistance of counsel claim, a defendant must demonstrate that (1) counsel's performance was deficient and (2) that he was prejudice thereby, normally proving that but for counsel's deficient performance, there was

11

a reasonable probability of a different result. Strickland v. Washington, 466 U.S. 668, 686 (1984). The MAR Court's adjudication was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Ground Three is denied.

### 4. Ground Four

In Ground Four, Petitioner contends that his habitual felon status was not constitutionally informed because he was threatened by the prosecutor and misled by the court as to the actual value of the plea bargain. Ground Four is denied for the same reasons that Ground One is denied.

### IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment because the petition is time-barred and, in any event, Petitioner's claims fail on the merits.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 8), is **GRANTED**.

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the

dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 24, 2014

Frank D. Whitney
Chief United States District Judge